[Cite as *Harding Pointe, Inc. v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4885.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Harding Pointe, Inc. et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 13AP-258 |
| v. | : | (C.P.C. No. 07CV-150) |
| Ohio Department of Job and Family Services, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on November 5, 2013

*Webster & Associates, Co. LPA*, and *Geoffrey E. Webster*, for appellants.

*Michael DeWine*, Attorney General, and *Rebecca L. Thomas*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

T. BRYANT, J.

{¶ 1} Plaintiffs-appellants, Harding Pointe, Inc. ("Harding Pointe") and H&G Nursing Home, Inc. dba Adams County Manor ("Adams County Manor"), appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Ohio Department of Job and Family Services ("ODJFS"). Because the trial court properly granted summary judgment for ODJFS, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Pursuant to R.C. Chapter 5111, the state of Ohio, through ODJFS, reimburses participating nursing homes and other facilities through the Medicaid program for reasonable costs of services provided. *Ohio Academy of Nursing Homes v.*

*Ohio Dept. of Job & Family Servs.,* 114 Ohio St.3d 14, 2007-Ohio-2620, ¶ 2. Since July 1993, the state has utilized a prospective payment system whereby it reimburses facilities by paying a per diem rate calculated based on the actual costs incurred by the facilities for a prior period. *Id.* Until June 30, 2005, the reimbursement rate was established after considering "a combination of allowable per diems established for direct-care costs, 'other protected' costs, indirect-care costs, and capital costs." *Drake Ctr., Inc. v. Ohio Dept. of Human Servs.,* 125 Ohio App.3d 678, 685-86 (10th Dist.1998).

{¶ 3} Pursuant to former Ohio Adm.Code 5101:3-3-24(E), when Medicaid-certified beds were added to an existing facility, replaced at the same facility, or subject to a change in provider agreement, ODJFS was required to increase the facility's reimbursement rate for capital costs, based upon a formula set forth in the rule, to account for the costs of the beds that were added, replaced or subject to a change in provider agreement. To effectuate a capital cost rate adjustment, a facility was required to file certain documentation with ODJFS, including a three-month projected cost report with supporting depreciation and amortization schedules. Former Ohio Adm.Code 5101:3-3-24(E)(1)(a)-(e). Former Ohio Adm.Code 5101:3-3-24(E)(2) provided that "[a] rate adjustment pursuant to paragraph (E) of this rule shall be implemented one month after the first day of the month after the department receives sufficient documentation of the costs."

{¶ 4} Effective July 1, 2005, 2005 Am.Sub.H.B. No. 66 ("H.B. No. 66") changed Ohio's Medicaid reimbursement system for nursing homes for fiscal year 2006.[1] Under H.B. No. 66, capital costs were considered in determining adjustments to reimbursement rates only under specified circumstances. H.B. No. 66, Section 206.66.22(G)(1)(b) provided:

> (G)(1) A nursing facility's rate established under this section shall not be subject to any adjustments except as follows:
>
> * * *
>
> (b) [T]he nursing facility's rate established under this section may be adjusted pursuant to a process established in rules adopted under section 5111.02 of the Revised Code to reflect a

---

[1] The state's fiscal year runs from July 1 through June 30. R.C. 9.34. Fiscal year 2006 ran from July 1, 2005 through June 30, 2006.

change in the nursing facility's capital costs due to any of the following:

(i) A change of provider agreement that goes into effect before July 1, 2005, and for which a rate adjustment is not implemented before June 30, 2005;

(ii) A reviewable activity for which a certificate of need application is filed with the Director of Health before July 1, 2005, costs are incurred before June 30, 2005, and a rate adjustment is not implemented before June 30, 2005;

(iii) An activity that the Director of Health, before July 1, 2005, rules is not a reviewable activity and for which costs are incurred before June 30, 2005, and a rate adjustment is not implemented before June 30, 2005.

{¶ 5} Absent one of these circumstances, nursing homes were paid the same per-diem rate for fiscal year 2006 that they had been paid on June 30, 2005, plus a $1.95 add-on, if applicable. H.B. No. 66, Section 206.66.22(B) provided:

(B) Except as otherwise provided in this section, the provider of a nursing facility that has a valid Medicaid provider agreement on June 30, 2005, and a valid Medicaid provider agreement for fiscal year 2006 shall be paid, for nursing facility services the nursing facility provides during fiscal year 2006, the sum of the following:

(1) The rate the provider is paid for nursing facility services the nursing facility provides on June 30, 2005.

(2) Unless the nursing facility is exempt from paying the franchise permit fee, one dollar and ninety-five cents.

{¶ 6} Because it was inconsistent with the reimbursement methodology mandated for fiscal year 2006 under H.B. No. 66, former Ohio Adm.Code 5101:3-3-24 was repealed on February 2, 2006. Six weeks later, on March 30, 2006, 2006 Am.Sub.H.B. No. 530 ("H.B. No. 530") became effective. H.B. No. 530 created a new capital compensation program. As relevant here, H.B. No. 530, Section 606.18.06 provided:

(B) The following qualify for per diem payments under this section:

* * *

(3) A nursing facility to which all of the following apply:

(a) The nursing facility does not qualify for a payment pursuant to division (B)(1) of this section.

(b) The nursing facility, before June 30, 2007, completes a capital project for which a certificate of need was filed with the Director of Health before June 15, 2005, and for which at least one of the following occurred before July 1, 2005 * * *;

(i) Any materials or equipment for the capital project were delivered;

(ii) Preparations for the physical site of the capital project, including, if applicable, excavation, began;

(iii) Actual work on the capital project began.

(c) The costs of the capital project are not fully reflected in the capital costs portion of the nursing facility's Medicaid reimbursement per diem rate on June 30, 2005.

(d) The nursing facility files a three-month projected capital cost report with the Director of Job and Family Services not later than sixty days after the later of the effective date of this section or the date the capital project is completed.

{¶ 7} Having outlined the pertinent legislative and administrative background, we set forth separately the factual and procedural histories relevant to Harding Pointe and Adams County Manor, as they are markedly different.

**HARDING POINTE**

{¶ 8} Harding Pointe became a Medicaid provider of nursing home services through a change of provider agreement effective June 30, 2005. By letter dated June 20, 2006, Harding Pointe requested a capital cost rate adjustment for fiscal year 2006 pursuant to the June 30, 2005 change in provider agreement. The letter stated that the projected capital cost report required by former Ohio Adm.Code 5101:3-3-24(E)(1) had been filed on May 30, 2005.

{¶ 9} By letter dated July 6, 2006, ODJFS denied Harding Pointe's request, averring that it had received the projected capital cost report on June 2, 2005 and, pursuant to former Ohio Adm.Code 5101:3-3-24(E)(2), any rate adjustment would have

been implemented on August 1, 2005 (one month after the first day of the month after the department received the cost report), after capital costs were no longer considered in determining reimbursement rates under H.B. No. 66, Section 206.66.22(B). ODJFS stated that in accordance with H.B. No. 66, Section 206.66.22(B), "the projected capital cost report had no effect on setting the provider's rate," and that Harding Pointe was to be paid the same per-diem rate it had been paid on June 30, 2005, plus a $1.95 add-on. (R. 129; Affidavit of Julie Evers, exhibit No. 4.)

{¶ 10} Pursuant to an amended complaint filed December 14, 2007,[2] Harding Pointe alleged that ODJFS's denial of its request for a capital cost rate adjustment constituted a retroactive application of law in violation of the provider agreements, Ohio Adm.Code 5101 and R.C. Chapter 5111, and the United States and Ohio Constitutions. Harding Pointe further alleged that ODJFS's actions resulted in a denial of procedural and substantive due process of law and equal protection of the laws. Harding Pointe also asserted claims under 42 U.S.C. 1396, et. seq. and 1983. Harding Pointe sought declaratory and injunctive relief, asserting that it "was and is entitled to a Medicaid rate for June 30, 2005 calculated and paid without regard to the provisions of Am. Sub. H.B. No. 66 and/or any other subsequently enacted legislation." (R. 67, Amended Complaint, ¶ 11.)

{¶ 11} Pursuant to a Civ.R. 12(B)(6) motion filed by ODJFS, the trial court dismissed Harding Pointe's equal protection and 42 U.S.C. 1396 and 1983 claims. ODJFS subsequently filed a motion for summary judgment on the remaining claims. ODJFS argued that Harding Pointe was not entitled to a capital cost rate adjustment for essentially the same reasons set forth in its July 6, 2006 denial letter, that is, that ODJFS received the projected capital cost report on June 2, 2005, and, therefore, pursuant to former Ohio Adm.Code 5101:3-3-24(E)(2), any rate adjustment would have been implemented on August 1, 2005, after H.B. No. 66, Section 206.66.22(B) went into effect and capital costs were no longer considered in determining reimbursement rates.

{¶ 12} Harding Pointe opposed ODJFS's motion for summary judgment, advancing several arguments. Harding Pointe first argued that a genuine issue of material fact existed as to the submission date of its projected capital cost report. Harding

---

[2] The December 14, 2007 amended complaint was filed by Harding Pointe, Adams County Manor and a third nursing home. This third nursing home voluntarily dismissed its claims on March 25, 2009.

Pointe averred that its prior representations (made both in its June 20, 2006 letter and its amended complaint) that it submitted the projected capital cost report on May 30, 2005 was a clerical error, as it had actually been submitted prior to April 30, 2005. Harding Pointe supported this statement with the deposition and affidavit testimony of its President and CEO, James Griffiths, and the affidavit testimony of Brian Colleran, the president of Provider Services, Inc. That evidence established that at the time the change in provider agreement was negotiated, Harding Pointe utilized the services of Provider Services, Inc., and that Mr. Colleran prepared the projected cost report for Harding Pointe and "submit[ted] it * * * in late April 2005." (R. 138, Plaintiffs' Amended Memoranum, exhibit D, Colleran affidavit, ¶ 6.) Because Harding Pointe had no personal knowledge of the exact filing date, it provided an inaccurate filing date to its attorney, who, in turn, included that inaccurate filing date in the letter requesting the rate adjustment. Harding Pointe maintained that because the projected capital cost report was filed prior to April 30, 2005, it was entitled to a rate adjustment as of June 1, 2005 pursuant to former Ohio Adm.Code 5101:3-3-24(E)(2).

{¶ 13} Harding Pointe also disputed the date on which ODJFS received the projected capital cost report. Harding Pointe maintained that ODJFS supported its assertion that it received the request on June 2, 2005 only with the affidavit of Julie Evers, the assistant bureau chief of the Bureau of Long Term Care Facilities for ODJFS in June 2005, and had not provided a time-stamped copy documenting the alleged June 2, 2005 receipt date. Harding Pointe further noted that Ms. Evers conceded in her deposition that she did not know whether the receipt date of June 2, 2005, as stated in her affidavit, referred to a time-stamp date or a postmark date and that she had no personal knowledge of the policies and procedures governing mail room procedures at ODJFS in June 2005.

{¶ 14} Harding Pointe also contended that ODJFS retroactively applied H.B. No. 66, Section 206.66.22 in denying its request for a capital cost rate adjustment. According to Harding Pointe, under former Ohio Adm.Code 5101:3-3-24(E), rate adjustment was mandatory as soon as an applicant met the requirements of Ohio Adm.Code 5101:3-3-24(E)(1); hence, the date on which rate adjustment payments would commence pursuant to Ohio Adm.Code 5101:3-3-24(E)(2) was irrelevant. Harding Pointe argued that because ODJFS never contested the sufficiency of Harding Pointe's documentation, its right to a

rate adjustment vested on June 30, 2005, the date it met the requirements of Ohio Adm.Code 5101:3-3-24(E)(1).

{¶ 15} ODJFS responded that Harding Pointe could not create a genuine issue of material fact by asserting unsupported facts that contradicted its amended complaint. More specifically, ODJFS challenged Harding Pointe's new claim that it submitted its request for a capital cost rate adjustment prior to April 30, 2005. ODJFS pointed out that Harding Pointe's amended complaint alleged that it submitted its request on May 30, 2005. ODJFS argued that Harding Pointe failed to provide any corroborating evidence demonstrating that it submitted its request prior to April 30, 2005, and that neither Mr. Colleran nor Mr. Griffiths provided a specific date.

{¶ 16} ODJFS also argued that all the evidence in the record established June 2, 2005 as the date ODJFS received Harding Pointe's projected capital cost report. ODJFS noted that its July 6, 2006 letter indicated that ODJFS received the request on June 2, 2005. ODJFS maintained that receipt on June 2, 2005 was consistent with Harding Pointe's claim in its amended complaint that it forwarded the request on May 30, 2005, and that Harding Pointe had failed to explain why ODJFS did not receive the request until June 2, 2005 if it had been submitted in April 2005. ODJFS also disputed Harding Pointe's contention that Ms. Evers lacked the personal knowledge to testify as to when ODJFS received the request, given her position with ODJFS and her concomitant knowledge of internal procedures.

{¶ 17} ODJFS also disputed Harding Pointe's claim that ODJFS retroactively applied H.B. No. 66, Section 206.66.22(B). ODJFS argued that Harding Pointe had no vested right in the continuation of the reimbursement system in effect on June 30, 2005, given the July 1, 2005 change in the law. ODJFS reiterated that, pursuant to former Ohio Adm.Code 5101:3-3-24(E)(2), any rate adjustment received by Harding Pointe would be implemented effective after July 1, 2005, the effective date of H.B. No. 66, Section 206.66.22(B), which precluded consideration of capital costs in assessing reimbursement rates. In other words, ODJFS argued that under former Ohio Adm.Code 5101:3-3-24(E)(2), no right to a rate adjustment vested until payment of the adjusted rate commenced.

{¶ 18} As to Harding Pointe's claim that ODJFS did not receive the projected capital cost report on June 2, 2005, the trial court referred to Ms. Evers' affidavit

testimony establishing receipt on June 2, 2005. The court averred that Harding Pointe had failed to present any evidence contradicting that affidavit and instead argued only that ODJFS had not submitted sufficient evidence to support the affidavit. The court accordingly found that "credible undisputed evidence" established that ODJFS received Harding Pointe's projected capital cost report on June 2, 2005. (R. 173-76 Decision and Entry, 11.)

{¶ 19} Having determined that ODJFS received the projected capital cost report on June 2, 2005, the court found that Harding Pointe was not entitled to a rate adjustment pursuant to former Ohio Adm.Code 5101:3-3-24(E)(2). Noting that the rule precluded implementation of a rate adjustment until August 1, 2005, the court concluded that ODJFS had correctly determined that Harding Pointe's unadjusted June 30, 2005 rate controlled its reimbursement rate for fiscal year 2006, and that ODJFS did not apply the law retroactively to Harding Pointe.

{¶ 20} The trial court further found that based on the foregoing analysis, Harding Pointe could not prevail on its due process claims or its claims based upon violations of R.C. Chapter 5111 and Ohio Administrative Code 5101. Accordingly, the trial court granted ODJFS's motion for summary judgment.

## ADAMS COUNTY MANOR

{¶ 21} Adams County Manor is a Medicaid provider of nursing home services pursuant to an agreement with ODJFS. The Ohio Department of Health issued Adams County Manor a certificate of need authorizing the construction of a new facility at its existing site to house 74 long-term care beds. On February 14, 2006, phase one of the renovation project was completed. On February 28, 2006, Adams County Manor submitted a request to ODJFS for a capital cost rate adjustment pursuant to former Ohio Adm.Code 5101:3-3-24(E). Included with this request was a three-month cost report encompassing January, February, and March 2006. At the time of this filing, Adams County Manor was unaware that former Ohio Adm.Code 5101:3-3-24(E) had been repealed on February 2, 2006. Although ODJFS received the submission on March 6, 2006, it provided no response to Adams County Manor.

{¶ 22} On May 19, 2006, Adams County Manor received a letter from ODJFS dated May 16, 2006, which informed all qualifying Medicaid providers of ODJFS's implementation of the capital cost compensation program under H.B. No. 530. ODJFS

explained that in order to receive reimbursement for capital costs, providers were required to file a three-month projected capital cost report with ODJFS "not later than sixty days after the later of the effective date of Section 606 18.06 of Am. Sub. H B 530 or the date the capital project is completed." (R. 138, exhibit B.)  The "general instructions" attached to the letter reiterated this requirement, and indicated that "[t]he period covered by the capital compensation cost report is the three month period beginning when the project was placed into service."  (R. 138, exhibit B.)  The letter further stated that ODJFS had developed a cost report specifically for the capital cost compensation program and directed providers to the website where the application and cost report could be downloaded and printed.

{¶ 23} Adams County Manor's renovation project was completed on April 1, 2006. According to Houser, Adams County Manor did not submit an application for the capital cost compensation program at this time because: (1) the application requested the same information already submitted on February 28, 2006, and (2) ODJFS had not advised Adams County Manor that it was not processing its February 28, 2006 submission.  On August 10, 2006, Adams County Manor filed a conforming application for the capital compensation program pursuant to H.B. No. 530.  ODJFS rejected the application as untimely.

{¶ 24} Pursuant to the amended complaint filed December 14, 2007, Adams County Manor challenged the denial of its request for a capital cost rate adjustment under former Ohio Adm.Code 5101:3-3-24 and the denial of its request to participate in the capital compensation program under H.B. No. 530.  Adams County Manor alleged the same state/federal law and constitutional violations asserted by Harding Pointe.  Adams County Manor sought declaratory and injunctive relief, asserting that in setting the reimbursement rate, ODJFS applied H.B. No. 530 but "improperly refused to consider * * * Adams County Manor's submitted request for capital rate adjustment."  (R. 67, Amended Complaint, ¶ 17.)

{¶ 25} ODJFS moved for summary judgment, arguing, as relevant here, that Adams County Manor was not entitled to a capital cost rate adjustment pursuant to former Ohio Adm.Code 5101:3-3-24(E) because that rule was repealed on February 2, 2006, prior to Adams County Manor's February 28, 2006 submission.

{¶ 26} Adams County Manor opposed ODJFS's motion for summary judgment, first arguing that its February 28, 2006 submission under former Ohio Adm.Code 5101:3-3-24(E) served as sufficient notice to ODJFS that Adams County Manor was unaware that the rule had been rescinded. It asserted that ODJFS was obligated pursuant to Ohio Adm.Code 5101:3-3-02(F)(3) to inform providers, including Adams County Manor, of the rescission of Ohio Adm.Code 5101:3-3-24. It further maintained that at the time ODJFS received its submission on March 6, 2006, it was obligated pursuant to former Ohio Adm.Code 5101:3-3-24(E)(3) to respond within 60 days and inform Adams County Manor that its request could no longer be processed under that provision.

{¶ 27} Adams County Manor further argued that at the time ODJFS received the February 28, 2006 submission, it was well aware of the pending introduction of H.B. No. 530 and the General Assembly's intent to create a new capital cost compensation program. Adams County Manor maintained that in light of this pending legislative activity, "it appear[ed] only logical" that ODJFS would either: (1) inform Adams County Manor that it regarded the February 28, 2006 submission as a nullity, or (2) interpret the request and attached documentation as a proper application for the capital cost compensation program pursuant to H.B. No. 530. (R. 138.)

{¶ 28} Finally, Adams County Manor argued that its August 10, 2006 application complied with all the substantive requirements of H.B. No. 530, Section 606.18.06(B)(3).

{¶ 29} In its reply, ODJFS disputed Adams County Manor's contention that ODJFS was obligated to accept its February 28, 2006 submission under former Ohio Adm.Code 5101:3-3-24(E) as an application for participation in the capital compensation program under H.B. No. 530. ODJFS maintained that the February 28, 2006 submission did not qualify as such because it was submitted before H.B. No. 530 went into effect, was not in the format specifically developed for the capital compensation program, and did not report costs for the proper time period. ODJFS further argued that Adams County Manor's August 10, 2006 application was untimely, having been filed outside the time limit imposed by H.B. No. 530.

{¶ 30} The trial court rejected Adams County Manor's argument that former Ohio Adm.Code 5101:3-3-24(E)(3) required ODJFS to respond to its February 28, 2006 submission within 60 days, as that regulation had been repealed prior to that submission. The court further concluded that no other regulation imposed an obligation on ODJFS to

respond to the February 28, 2006 submission.  The court also found that even if Adams County Manor legitimately was waiting for ODJFS's response within 60 days after receiving its February 28, 2006 submission, it should have expected a response on or before May 6, 2006 (60 days from ODJFS's March 6, 2006 receipt of the submission). The court reasoned that had Adams County Manor acted on May 6, 2006, after receiving no response from ODJFS, it could have submitted a timely application under H.B. No. 530, as the time for submitting an application had not yet expired.  The court also noted that Adams County Manor failed to explain why it waited an additional three months after the expected response time expired to take further action.  In short, the court found that Adams County Manor was not entitled to either a capital cost rate adjustment under former Ohio Adm.Code 5101:3-3-24(E) or to participate in the H.B. No. 530 capital compensation program.   The trial court accordingly granted ODJFS's motion for summary judgment.

## II.  ASSIGNMENTS OF ERROR

{¶ 31} Harding Pointe and Adams County Manor timely appeal from the trial court's judgment and advance the following three assignments of error for our review:

> ASSIGNMENT OF ERROR I:
>
> THE TRIAL COURT ERRED IN FINDING DEFENDANTS [SIC] DID NOT RETROACTIVELY APPLY LAWS TO HARDING POINTE AND SUBSEQUENTLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST HARDING POINT [SIC].
>
> ASSIGNMENT OF ERROR II:
>
> THE TRIAL COURT ERRED IN IGNORING OHIO LAW AND SUBSEQUENTLY FINDING ADAMS WAS NOT ENTITLED TO A RATE ADJUSTMENT AND WAS NOT ELIGIBLE TO PARTICIPATE IN THE H.B. 530 CAPITAL COMPENSATION PROGRAM.
>
> ASSIGNMENT OF ERROR III:
>
> THE TRIAL COURT ERRED IN FINDING APPELLANTS DID NOT SUFFER A VIOLATION OF THEIR DUE PROCESS RIGHTS.

## III. STANDARD OF REVIEW

{¶ 32} Because this matter was decided by the trial court on summary judgment, we first set forth the familiar standard of review governing summary judgment dispositions. Appellate review of a summary judgment disposition is de novo. *Helton v. Scioto Cty. Bd. of Commrs.,* 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.,* 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 33} Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.,* 78 Ohio St.3d 181, 183 (1997).

{¶ 34} When seeking summary judgment on grounds that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

## IV. FIRST ASSIGNMENT OF ERROR – HARDING POINTE

{¶ 35} In this assignment of error, Harding Pointe first contends the trial court improperly granted summary judgment in favor of ODJFS because a genuine issue of material fact exists as to the date on which ODJFS received Harding Pointe's projected

capital cost report. Harding Pointe argues that it provided credible affidavit testimony from Mr. Colleran to counter ODJFS's affidavit testimony from Ms. Evers that ODJFS received the report on June 2, 2005. Harding Pointe contends the trial court impermissibly weighed Mr. Colleran's testimony against Ms. Evers' testimony and found Ms. Evers' testimony more credible.

{¶ 36} We note initially that Harding Pointe's argument implies that it considers the date ODJFS received Harding Pointe's projected capital cost report to be important because former Ohio Adm.Code 5101:3-3-24(E)(2) provided that a rate adjustment would be implemented one month after the first day of the month after ODJFS received sufficient documentation of a provider's projected capital costs. Thus, if ODJFS received Harding Pointe's report in April 2005, a rate adjustment would be implemented in June 2005, prior to the effective date of H.B. No. 66, and thus would include capital costs. In contrast, if ODJFS received Harding Pointe's report in either May or June 2005, a rate adjustment would not be implemented until after the effective date of H.B. No. 66, and thus would not include capital costs.

{¶ 37} Upon review of the record, we find that the trial court could not have "weighed" evidence regarding the date ODJFS received Harding Pointe's projected capital cost report because the only evidence which precisely established that date was submitted by ODJFS. Ms. Evers' affidavit established that ODJFS received Harding Pointe's projected capital cost report on June 2, 2005. In his affidavit, Mr. Colleran stated only that he prepared and "submitted" the projected capital cost report on behalf of Harding Pointe in "late April 2005." (R. 138, exhibit D.) However, Mr. Colleran's affidavit does not establish when ODJFS received the report. Indeed, Mr. Colleran's affidavit does not explain the meaning of the term "submitted" and does not precisely state the date the cost report was "submitted." For example, if by "submitted" Mr. Colleran means that he "filed" the report with ODJFS in "late April 2005," Harding Pointe may have been entitled to a capital cost rate adjustment under the law in effect prior to the effective date of H.B. No. 66 if ODJFS "received" the report at the time it was "filed." However, if by "submitted" Mr. Colleran means that he "sent" the report in "late April 2005," Harding Pointe may not have been entitled to a capital cost rate adjustment because the report could have been "sent" as late as April 30, 2005, and not "received" by ODJFS until May 1, 2005. As noted above, if ODJFS received Harding Pointe's report in May 2005, a rate

adjustment would not be implemented until after the effective date of H.B. No. 66, and therefore would not include capital costs. The affidavit testimony submitted by Harding Pointe does not establish a genuine issue of material fact as to the date on which ODJFS received Harding Pointe's projected capital cost report.

{¶ 38} We further note that in its response to ODJFS's motion for summary judgment, Harding Pointe relied on Mr. Colleran's affidavit in an effort to establish the date its projected capital cost report was "submitted," not the date ODJFS "received" the report. The trial court recognized this distinction and concluded that Harding Pointe had not presented any evidence contradicting Ms. Evers' testimony as to the receipt date, having instead only argued that ODJFS had not submitted sufficient evidence to support Ms. Evers' affidavit.

{¶ 39} Harding Pointe's second contention somewhat contradicts its first argument. As noted above, Harding Pointe first argues that a genuine issue of material fact exists as to when ODJFS received its projected capital cost report—an argument that seemingly acknowledges the relevance of Ohio Adm.Code 5101:3-3-24(E)(2). However, in its second argument, Harding Pointe asserts that ODJFS retroactively applied H.B. No. 66. More specifically, Harding Pointe contends that under former Ohio Adm.Code 5101:3-3-24(E), rate adjustment was mandatory when an applicant met the requirements of former Ohio Adm.Code 5101:3-3-24(E)(1); thus, the date on which rate adjustment payments would be implemented pursuant to Ohio Adm.Code 5101:3-3-24(E)(2) is irrelevant. Harding Pointe contends that because ODJFS never contested the sufficiency of the documentation submitted with the request, its right to a rate adjustment vested on June 30, 2005, the day it became a Medicaid provider pursuant to the change in provider agreement and met the requirements of Ohio Adm.Code 5101:3-3-24(E)(1).

{¶ 40} Ohio Constitution, Article II, Section 28 prohibits the General Assembly from passing retroactive laws. A retroactive law is one that impairs rights that are vested or acquired before the statute came into force or it attaches a new disability in respect to past transactions or considerations. *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes,* 7 Ohio St.3d 7, 10 (1983). " 'A right is not regarded as vested in the constitutional sense unless it amounts to something more than a mere expectation or interest based upon an anticipated continuance of existing law.' " *Dukes v. Dir., Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 09AP-515, 2009-Ohio-6781, ¶ 20, quoting *In re Emery,* 59

Ohio App.2d 7, 11 (1st Dist.1978). " '[W]here no vested right has been created, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality." ' " *Dukes* at ¶ 20, quoting *State v. Cook,* 83 Ohio St.3d 404, 412 (1998), quoting *State ex rel. Matz v. Brown,* 37 Ohio St.3d 279, 281 (1988).

{¶ 41} Harding Pointe did not have a vested right to a reimbursement rate which included capital costs. The state has the right to enact, amend and repeal laws, including Medicaid reimbursement laws. Any rights Harding Pointe may have had under laws pertaining to the reimbursement system on June 30, 2005 ceased to exist when the General Assembly chose to amend those laws on July 1, 2005. *Lawrence v. Edwin Shaw Hosp.,* 34 Ohio App.3d 137, 141 (10th Dist.1986).

{¶ 42} Moreover, the right to a provider agreement is not absolute. Such agreements must be renewed annually and ODJFS may "terminate, suspend, not enter into, or not renew" provider agreements with 30 days notice. Former Ohio Adm.Code 5101:3-3-02(G). Provider agreements are expressly subject to ODJFS's regulations, including regulations governing termination, suspension and non-renewal if providers fail to comply with the laws and rules adopted under R.C. Chapter 5111. Accordingly, Harding Pointe's provider agreement does confer a vested right in the constitutional sense for the purposes of retroactivity analysis. *See Dukes* at ¶ 22.

{¶ 43} Finally, to the extent Harding Pointe argues that it has a separate right to a capital cost rate adjustment pursuant to former R.C. 5111.25, such argument has been waived. Careful review of Harding Pointe's memorandum in opposition to ODJFS's motion for summary judgment reveals no citation to, or argument regarding, R.C. 5111.25. A party who fails to raise an argument in the trial court waives the right to raise it on appeal. *Betz v. Penske Truck Leasing Co., L.P.,* 10th Dist. No. 11AP-982, 2012-Ohio-3472, ¶ 34.

{¶ 44} The first assignment of error is overruled.

## V.  SECOND ASSIGNMENT OF ERROR – ADAMS COUNTY MANOR

{¶ 45} In this assignment of error, Adams County Manor first contends the trial court erred in concluding that it was not entitled to a capital cost rate adjustment under former Ohio Adm.Code 5101:3-3-24(E) . Although Adams County Manor concedes that it

submitted its request more than three weeks after former Ohio Adm.Code 5101:3-3-24 had been rescinded, it nonetheless maintains that it was entitled to a rate adjustment under that rule because ODJFS failed to inform it that the rule had been rescinded, in contravention of former Ohio Adm.Code 5101:3-3-02(F)(3), and failed to respond to its request for a rate adjustment, in contravention of former Ohio Adm.Code 5101:3-3-24(E)(3).

{¶ 46} Regarding former Ohio Adm.Code 5101:3-3-02(F)(3), ODJFS's summary judgment materials establish that the impending rescission of former Ohio Adm.Code 5101:3-3-24 was announced as a final action on January 23, 2006. (*See* "Rule Summary and Fiscal Analysis" for rescission of former Ohio Adm.Code 5101:3-3-24, R. 129, ODJFS's motion for summary judgment, exhibit F.) This notice complied with former Ohio Adm.Code 5101:3-3-24(F)(3), which directed ODJFS to provide the number and title of any rule to be rescinded.

{¶ 47} As to former Ohio Adm.Code 5101:3-3-24(E)(3), we acknowledge that such regulation obligated ODJFS to respond to a provider's request made pursuant to former Ohio Adm.Code 5101:3-3-24(E) within 60 days of receipt of the request. As noted by the trial court, however, that regulation was also repealed on February 2, 2006, more than three weeks before Adams County Manor submitted its request. Accordingly, ODJFS was not required to respond to Adams County Manor's request for a rate adjustment made pursuant to former Ohio Adm.Code 5101:3-3-24(E).

{¶ 48} For these reasons, the trial court did not err in concluding that Adams County Manor was not entitled to a capital cost rate adjustment under former Ohio Adm.Code 5101:3-3-24(E).

{¶ 49} Adams County Manor next argues the trial court erred in concluding that it was not eligible to participate in the capital compensation program established under H.B. No. 530. Adams County Manor first maintains that because ODJFS was aware of the pending introduction of H.B. No. 530 at the time ODJFS received Adams County Manor's February 28, 2006 request for a capital cost rate adjustment under former Ohio Adm.Code 5101:3-3-24(E), it should have accepted the cost report included with that request and treated it as an application for the pending capital cost compensation program.

{¶ 50} Assuming, arguendo, that ODJFS could be compelled to do so, the cost report Adams County Manor submitted with its request under former Ohio Adm.Code 5101:3-3-24(E) did not comply with the requirement under H.B. No. 530 that a three-month cost report cover a period beginning only after the completed project is placed into service. *See* H.B. No. 530, Section 606.18.06(C)(1) and (K)(1)(b) (read together, showing that the award would be calculated based on the period covered by the cost report and that no funds could be awarded for days prior to placement of the completed project into service). The projected cost report submitted with the February 28, 2006 request covered the period January 1 through March 30, 2006. Adams County Manor's project was not completed until April 1, 2006. To comply with H.B. No. 530, Adams County Manor's three-month cost report had to cover the three-month period after the project was completed, that is, April 1 through June 30, 2006. Because the cost report did not cover the required time period, Adams County Manor's request for a rate adjustment under former Ohio Adm.Code 5101:3-3-24 did not comply with H.B. No. 530.

{¶ 51} Adams County Manor also contends the trial court erred in concluding that its August 10, 2006 application for the capital compensation program under H.B. No. 530 was untimely. We disagree.

{¶ 52} As noted above, ODJFS's May 16, 2006 letter expressly informed Adams County Manor that an application for the capital compensation program under H.B. No. 530 must be filed no later than 60 days after the later of the effective date of H.B. No. 530 or the date on which the project for which capital costs were incurred was completed. Adams County Manor's application thus was due no later than June 1, 2006. Adams County Manor's August 10, 2006 application was untimely, as it was filed well after that date.

{¶ 53} Adams County Manor contends it could timely have filed its application had ODJFS responded to its February 28, 2006 request under Ohio Adm.Code 5101:3-3-24(E). As noted by the trial court, even if Adams County Manor was unaware that former Ohio Adm.Code 5101:3-3-24 had been repealed and reasonably expected a response from ODJFS within 60 days of the March 6, 2006 receipt of that submission, such response was due on or before May 6, 2006. Had Adams County Manor acted in May 2006 after receiving no response from ODJFS, it could have submitted a timely application under H.B. No. 530. As noted above, ODJFS's May 16, 2006 letter explained the new

application process and directed providers to the website where the new application could be downloaded and printed.

{¶ 54} For these reasons, the trial court did not err in concluding that Adams County Manor was not eligible for the capital cost compensation program under H.B. No. 530.

{¶ 55} Finally, Adams County Manor's contention that it has a separate right under R.C. 5111.25 to recoup the capital costs incurred in its expansion project fails for the same reason Harding Pointe's identical argument failed, that is, such argument has been waived.

{¶ 56} The second assignment of error is overruled.

## VI. THIRD ASSIGNMENT OF ERROR – DUE PROCESS

{¶ 57} By the third assignment of error, both Harding Pointe and Adams County Manor contend the trial court erred in granting summary judgment to ODJFS on their procedural and substantive due process claims.

{¶ 58} In *Kistler v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 14, this court discussed the distinction between procedural and substantive due process:

> Due process has been interpreted to contain two components: procedural and substantive. State v. Ward (1999), 130 Ohio App.3d 551, 557, 720 N.E.2d 603. " 'Procedural due process' ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision." Id. The essence of substantive due process is the protection from certain arbitrary, wrongful governmental actions irrespective of the fairness of the procedures used to implement them. Southern Health Facilities, Inc. v. Somani (Dec. 29, 1995), Franklin App. No. 95APE06-826.

{¶ 59} Although the due process arguments asserted by both Harding Pointe and Adams County Manor are somewhat difficult to decipher, we perceive them to constitute a repackaging of their fundamental contentions, that is, that ODJFS improperly denied their requests for capital cost rate adjustments under former Ohio Adm.Code 5101:3-3-24, and, in Adams County Manor's case, participation in the capital compensation program under H.B. No. 530. For the reasons stated above, we conclude that ODJFS employed fair procedures and did not arbitrarily deny the requests under either former Ohio Adm.Code

5101:3-3-24 or H.B. No. 530.  The trial court thus properly granted summary judgment to ODJFS on the procedural and substantive due process claims.

{¶ 60}  The third assignment of error is overruled.

## VII.  DISPOSITION

{¶ 61}  Having overruled all three assignments error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).