[Cite as *In re K.J.*, 2018-Ohio-471.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| [K.J.] et al., | : | No. 17AP-457 |
| | | (C.P.C. No. 15JU-0346) |
| [K.B., | : | |
| Appellant]. | : | (REGULAR CALENDAR) |
| | : | |
| In the Matter of: | : | |
| [K.J.] et al., | : | No. 17AP-500 |
| | | (C.P.C. No. 15JU-0346) |
| [C.J., | : | |
| Appellant]. | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on February 6, 2018

**On brief:** *William T. Cramer,* for K.J. **Argued:** *William T. Cramer.*

**On brief:** *Robert J. McClaren*, for Franklin County Children Services. **Argued:** *Robert J. McClaren.*

**On brief:** *Alex J. Pomerants,* for appellant K.B. **Argued:** *Alex J. Pomerants.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce,* for appellant C.J. **Argued:** *Timothy E. Pierce.*

**On brief:** *Daniel W. Sullenberger*, Guardian ad Litem. **Argued:** *Daniel W. Sullenberger.*

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

LUPER SCHUSTER, J.

Appellants, K.B. ("mother") and C.J. ("father"), parents of K.J., L.J., and M.J. (collectively "the children"), appeal from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating their parental rights and placing the children in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

## I. Facts and Procedural History

This case involves FCCS's request for permanent custody of K.J., born July 21, 2010; L.J., born January 3, 2012; and M.J., born June 6, 2013. On January 12, 2015, FCCS filed a complaint alleging the children to be neglected and dependent minors. At that date, K.J. was four years old, L.J. was three years old, and M.J. was one year old. FCCS filed the neglect and dependency actions after receiving information that father was physically abusive to mother in the presence of the children, mother "whoops" the children very hard, K.J. was burned by a cigarette, father and mother were possibly using heroin, the family was being evicted from their home, the children wear clothes that are dirty and do not fit, the floor of the home is covered in both dog and human feces, the parents do not seek medical treatment for the children, the children were allowed to play near the open oven being used to heat the home, and the home is infested with roaches and fruit flies. Initially, FCCS placed the children with relatives in an out-of-home safety plan. During this time, mother and father were scheduled to complete drug screens but failed to do so.

On January 12, 2015, the relatives informed FCCS they could no longer care for the children. That same day, the trial court granted an emergency care order placing the children into the temporary emergency custody of FCCS. The next day, January 13, 2015, the trial court issued an order returning the children to the care of mother and father with a protective supervision order. As part of the protective supervision order, the trial court ordered parents not to use physical discipline with the children, to cooperate with random drug screens and assessments, and to cooperate with the caseworker.

Less than one month later, on February 6, 2015, the trial court awarded temporary custody of the children back to FCCS after the parents tested positive for heroin and the parents lacked income, police came to the home and discovered unsanitary and unsafe

conditions, and father failed to provide any care to the children at all.  On February 25, 2015, the trial court adjudicated the children dependent and awarded temporary custody to FCCS.  Subsequently, the trial court extended temporary custody on January 11, 2016 and again on August 18, 2016.

On November 15, 2016, FCCS filed a motion for permanent court commitment ("PCC"), also known as permanent custody, of the children.  Initially, the trial court scheduled the PCC hearing for December 16, 2016.  However, the trial court granted mother's motion to schedule a pretrial conference March 1, 2017.  Neither mother nor father attended the March 1, 2017 pretrial conference.  Counsel for mother stated mother "may be in an emergency room."  (Mar. 1, 2017 Tr. at 5.)  During the pretrial conference, the trial court discussed scheduling the final trial date.  Counsel for FCCS indicated she would be out on family leave in July and August.  The trial court scheduled the final trial date for June 5 and 6, 2017.  Additionally, the trial court scheduled a second pretrial conference for April 26, 2017.

At the April 26, 2017 pretrial conference, the trial court conducted an in camera interview with K.J.  Once again, neither mother nor father attended the pretrial conference.  Counsel for mother stated that while he was not certain of the reason for mother's absence, he "heard that she is with her sick mother at the hospital."  (Apr. 26, 2017 Tr. at 29.)  Counsel for father stated father may be in Florida.  The trial court reminded the parties of the June 5 and 6, 2017 trial date, and counsel for FCCS stated she intended to only present the FCCS caseworker and the guardian ad litem for the children as witnesses, and she stated she would call the parents to testify if they appeared for trial.  Counsel for FCCS specifically noted on the record her concern that the parents would not show up for the PCC hearing based on mother's and father's failures to attend prior hearing dates or to make progress on their case plan requirements.

On June 5, 2017, the trial court conducted the scheduled hearing on FCCS's motion for permanent custody.  At the beginning of the hearing, counsel for both mother and father made oral motions to continue the case because neither mother nor father was present.  Counsel for mother stated mother may have suddenly become ill and could not attend.  Meanwhile, counsel for father stated that counsel learned from FCCS's counsel that same morning that father had been arrested on a minor theft charge in South

Carolina and was currently incarcerated pending the resolution of that charge. Father's counsel presented the court with a printout from the webpage for Horry County, South Carolina stating father was arrested by the Myrtle Beach Police Department on June 2, 2017. Counsel for FCCS, the guardian ad litem, and counsel for K.J. all objected to the continuance requests. The trial court overruled the continuance requests and proceeded to trial.

During the PCC hearing, FCCS presented the testimony of three witnesses: Sarah Terstage, a child welfare caseworker for FCCS; Wanda Ganjehsani, the children's guardian ad litem; and Joyce Sanders, a case manager for Ohio Guidestone who provided substance abuse and other counseling to mother. After the testimony of the witnesses and the submission of FCCS's exhibits, the court issued a written decision on June 12, 2017 granting FCCS's petition for permanent custody. The trial court considered the factors in R.C. 2151.414(D) and determined there was clear and convincing evidence that it was in the children's best interest to grant the motion for permanent custody.

Mother and father both timely appeal. This court sua sponte consolidated the cases for purposes of appeal.

## II. Assignments of Error

Mother assigns the following error for our review:

> [1.] The trial court did abuse its discretion when it denied Appellant's motion for continuance and granted the Franklin County Children Services Motion for Permanent Custody of the minor children.

Additionally, father assigns the following errors for our review:

> [1.] The lower court violated Father-Appellant's right to Due Process under the Fifth and Fourteenth Amendments of the United States Constitution and his right to Due Course of Law under Article I, Sections 1 and 16 of the Ohio Constitution when it failed to ensure the presence at trial of Father-Appellant who at the time was incarcerated and/or when it failed to make alternative arrangements for his participation in the trial.

> [2.] The lower court erred when it denied Father-Appellant's continuance request which undermined his right to be present and/or participate at the parental rights termination trial in

>violation of the Due Process Clauses of Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law Clauses of Article I, Sections 1 and 16 of the Ohio Constitution and Juv.R. 23.

## III.  Mother's First Assignment of Error and Father's First and Second Assignments of Error – Request for a Continuance

Mother's sole assignment of error and father's two assignments of error are interrelated and we address them jointly.  In her first assignment of error, mother argues the trial court erred when it denied her motion for continuance at the start of the permanent custody hearing.  In his first assignment of error, father argues the trial court violated his due process rights when it failed to ensure his presence at the permanent custody hearing.  In his second assignment of error, father argues the trial court erred when it denied his request for a continuance at the start of the permanent custody hearing.  Taken together, these assignments of error assert the trial court erred when it denied the continuance requests and proceeded to the permanent custody hearing when mother and father were not present.

"Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children."  *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child.  *In re Murray*, 52 Ohio St.3d 155, 157 (1990).  However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child.  *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).  In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child.  *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

A trial court may grant permanent custody if it determines by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), " 'such relief is in the best interest of the child.' "  *In re G.E.H.*, 10th Dist. No. 15AP-966, 2016-Ohio-3535, ¶ 52, quoting *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 9.  On appeal, we will not reverse a trial

court's decision in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 10th Dist. No. 04AP-1296, 2005-Ohio-6622, ¶ 4, citing *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *In re J.T.* at ¶ 8.

Mother and father, however, do not argue that the trial court's decision to award permanent custody to FCCS was against the manifest weight of the evidence. Rather, mother and father argue the trial court erred when it failed to grant their requested continuance and proceeded to trial in their absence.

An appellate court will not reverse a denial of a continuance in a PCC case absent an abuse of discretion. *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 26, citing *In re B.G.W.*, 10th Dist. No. 08AP-181, 2008-Ohio-3693, ¶ 23. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Further, " '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *In re J.B.* at ¶ 26, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 14. In evaluating a request for a continuance, a court considers: (1) the length of the requested delay; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors, depending on the unique circumstances of each case. *Woods* at ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *In re J.B.* at ¶ 26.

**A. Mother's Request for a Continuance**

Mother failed to appear the day of trial and her counsel orally moved for a continuance. Loc.R. 2 of the Court of Common Pleas of Franklin County, Division of Domestic Relations, Juvenile Branch provides that a trial court will not grant a continuance the day of trial without a showing of good cause. Counsel for mother stated mother had tried to come to the hearing but had a "medical emergency" and had to call an ambulance. (June 5, 2017 Tr. at 4-5.) However, counsel for mother stated that he was unable to track down the ambulance and did not know whether mother actually went to a hospital or, if so, to what hospital she went. Counsel stated he was unsure how long of a continuance he was requesting because he did not know the extent of the medical emergency, but he asked for "a couple weeks" for mother's condition to improve. (June 5, 2017 Tr. at 5.)

In objecting to mother's request for a continuance, counsel for FCCS noted mother's history throughout the case of failing to appear for scheduled hearings under the stated reason of a "medical emergency" only for the parties to discover upon investigation that mother was not actually in the hospital on those occasions. (June 5, 2017 Tr. at 7-8.) Counsel for FCCS stated she made a point at the last pretrial conference before the PCC hearing to note on the record her concern that mother would not show up for the final hearing. Additionally, counsel for FCCS noted the testimony at the hearing would indicate that mother makes frequent trips to different medical providers related to her substance abuse issues. The FCCS caseworker testified mother had been to the emergency room 25 times between August 2014 and August 2016.

Considering all the circumstances surrounding mother's request for a continuance, we conclude the trial court did not abuse its discretion in denying her oral motion for continuance on the day of trial. Though counsel for mother requested an unspecified delay so that mother could be present, mother had a history of failing to attend hearings at the last minute. The trial court initially scheduled the PCC hearing for December 16, 2016 but ultimately rescheduled the hearing for June 5, 2017 to allow for ample pretrial hearings and preparation. Still, the PCC hearing on June 5, 2017 marked the third consecutive hearing date for which mother knew of the hearing and yet failed to attend. Pursuant to R.C. 2151.414(A)(2), the trial court is to hold the PCC hearing no later than 120 days after the agency files the PCC motion except for "good cause shown" for a

reasonable continuance.  The trial court had already extended the time frame for the PCC hearing to accommodate the pretrial hearings, and by the time of the June 5, 2017 hearing, the PCC motion had been pending for more than 200 days.  *See In re J.C.*, 10th Dist. No. 10AP-766, 2011-Ohio-715, ¶ 46 (a trial court does not abuse its discretion in denying a request for a continuance when the PCC hearing is already past the 120-deadline contained in R.C. 2151.414(A)(2)).

Moreover, by the time of the PCC hearing, the children had been in FCCS's custody for more than two years, and granting a continuance on the day of the hearing would have presented an inconvenience to opposing counsel, who was scheduled for family leave the next month, as well as prolonging the accomplishment of the ultimate goal of establishing permanency for the children.  *See In re J.M.*, 10th Dist. No. 15AP-234, 2015-Ohio-3988, ¶ 26 (a trial court may consider the children's length of time in foster care and potential for adoptive placement as a relevant factor in determining whether to grant or deny a continuance).  The inability for FCCS or the other parties to verify mother's medical excuses throughout the proceedings rendered the stated reason for mother's absence at the PCC hearing lacking in credibility.

Mother asserts on appeal that had she been able to attend the hearing, she would have presented testimony that she had made more progress on her case plan, including obtaining stable housing, employment, and near completion of drug and alcohol treatment.  Although mother's argument is speculative and relies on facts not in the record, we note that even if mother were able to demonstrate compliance with the case plan that was unknown to FCCS at the time of the PCC hearing, mother still does not explain her failure to make any substantial progress toward reunification with her children during the more than two years that the case had been open with FCCS. *In re A.L.*, 10th Dist. No. 15AP-1040, 2016-Ohio-3189, ¶ 27 (noting a parent requesting a continuance for additional time to demonstrate she has met the objectives of a nearly two-year old case plan on the same day of the PCC hearing bears a heavy burden to show the trial court abuses its discretion in denying the continuance); *In re B.G.W.* at ¶ 24-28 (no abuse of discretion in denying a continuance request on the day of the PCC hearing when the parent hopes to use the additional time to show compliance with the case plan

requirements as the parent failed to show commitment and willingness to provide a permanent home to the children during the pendency of the case).

Additionally, K.J. stated a desire for adoption and not to return to her mother, and the children's guardian ad litem recommended the court grant FCCS's motion for permanent custody. The children had been in foster care for approximately two and one-half years. Thus, even if mother had been able to testify to newly revealed progress on her case plan, it is unlikely that such information would have changed the outcome of the case. *In re B.G.W.* at ¶ 27 (no abuse of discretion in granting a continuance where the continuance likely would not have changed the outcome of the case); *In re A.L.* at ¶ 29.

Having reviewed the record and considered the *Unger* factors outlined above, we conclude the trial court did not abuse its discretion in denying mother's motion for continuance. We overrule mother's sole assignment of error.

### B. Father's Request for Continuance

On the day of trial, father's counsel joined mother's counsel's request for a continuance. Father's counsel requested a continuance for the additional grounds that he had reason to believe that father may have been incarcerated in South Carolina. At the time of the PCC hearing, father had neither seen his children nor completed any portion of his case plan in over one year. On appeal, father asserts through his two assignments of error that the trial court erred in denying his continuance request, framing his arguments as constitutional violations.

As previously noted, "[p]arents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.* at ¶ 10, citing *Troxel* at 65. "[W]hen the state attempts to permanently terminate the relationship between a parent and child, the parent ' "must be afforded every procedural and substantive protection the law allows." ' " *In re R.K.*, ___ Ohio St.3d ___ , 2018-Ohio-23, ¶ 5, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Additionally, "[t]his court has stated that natural parents have a constitutionally protected right to be present at a permanent custody hearing." (Internal quotations omitted.) *In re B.M.*, 10th Dist. No. 09AP-60, 2009-Ohio-4846, ¶ 13.

**1. Failure to Transport or Arrange Alternate Means of Participation**

Under his first assignment of error, father argues the trial court erred when it failed to ensure his presence at the trial or make alternative arrangements for his participation in the trial. However, as FCCS notes, neither father nor counsel for father raised in the trial court the issue of whether father could be transported to the hearing or whether alternate arrangements could be made to ensure father's participation. "A constitutional issue not raised at trial 'need not be heard for the first time on appeal.' " *State v. Douglas*, 10th Dist. No. 09AP-111, 2009-Ohio-6659, ¶ 61, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus; *In re Dailey*, 10th Dist. No. 04AP-1346, 2005-Ohio-2196, ¶ 25 ("[w]hen a constitutional issue is not raised before the trial court, it will not be addressed in the first instance by the court of appeals"). (Internal quotations omitted.) Thus, because there was no request made at the trial court to arrange for father's transportation to the hearing or to arrange for his participation in some other way, we will not address for the first time on appeal whether the trial court violated father's constitutional rights in this regard. Thus, we overrule father's first assignment of error.

**2. Due Process**

In his second assignment of error, father asserts the trial court violated father's due process rights when it denied his request for a continuance. "[A]n incarcerated parent does not have 'an absolute due process right to attend the trial of a civil action to which he is a party.' " *In re M.M.*, 10th Dist. No. 14CA6, 2014-Ohio-5111, ¶ 43, quoting *Abuhilwa v. Board*, 4th Dist. No. 08CA3, 2008-Ohio-5326, ¶ 7. In determining whether the due process rights of an incarcerated parent have been infringed, we apply the test set forth by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 43. "Under the *Mathews* test, a court must consider and weigh: (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional safeguards." *Id.*, citing *Mathews* at 335.

Father did not attend the PCC hearing. His counsel attributed father's failure to attend to the fact that counsel had learned that same morning that father was incarcerated in South Carolina. However, the record indicates that by the time of the PCC hearing, father had not seen the children in more than one year. Additionally, he had not

made any attempts to complete any portion of his case plan in more than one year. Counsel for father only learned father was possibly incarcerated when counsel for FCCS shared that information with father's counsel. Meanwhile, the children had been in foster care since February 2015. Under these circumstances, father's potential loss of rights "pale when measured against the best interests of" the children. *In re K.L.* at ¶ 44 (no deprivation of father's due process rights in conducting permanent custody hearing in father's absence where incarcerated father of twins had only met the children one time and lost contact with the children).

As in *In re K.L.*, father here also lost contact with the children and demonstrated an inability to be physically present in the children's lives, so there was little risk of an error in the proceedings as a result of his absence. *Id.* Father was represented by counsel throughout the proceedings, and father does not indicate how the proceedings might have changed or how his presence might have changed the outcome. As we noted in the resolution of mother's assignment of error, the PCC motion had been pending for more than 200 days by the time of the hearing, and there would have been a burden to the court, opposing counsel, and especially the children in delaying their need for permanency if the court had granted the continuance with no indication that any length of delay would ensure father's attendance. *See In re M.M.* at ¶ 51 (the trial court did not deprive parent of her due process right to a fundamental fair permanent custody hearing when it proceeded with the permanent custody hearing while she was incarcerated because "[c]ounsel meaningfully represented appellant at the hearing, a complete record was made, and appellant has failed to show what additional testimony or evidence she would have offered that would have changed the outcome of the case").

Thus, under these circumstances, we cannot find that the trial court violated father's due process rights when it denied his motion for continuance. We overrule father's second and final assignment of error.

## IV. Disposition

Based on the foregoing reasons, the trial court did not abuse its discretion in denying mother's motion for a continuance and did not violate father's constitutional right to due process in denying his motion for a continuance when it conducted the permanent custody hearing in mother's and father's absences. Having overruled mother's

sole assignment of error and father's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

_____