[Cite as *In re K.R.*, 2023-Ohio-359.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                          :

[K.R., Neglected Child,                     :           No. 22AP-51
                                                   (C.P.C. No. 12JU-5813)
                                           :
C.S.J., Father,                            (REGULAR CALENDAR)
                                           :
          Appellant].                       :

                                           :

---

D E C I S I O N

Rendered on February 7, 2023

---

**On brief:** *Robert E. Shea*, for appellant.

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, C.S.J., father of K.R., neglected child, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, placing K.R. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} K.R. was born in May 2007, and father's paternity of this child was established by genetic testing approximately one month later, in June 2007. This matter commenced in April 2012, when FCCS filed a complaint regarding K.R. and three other children of mother, C.R., which included a child presumably fathered by C.S.J., alleging they were neglected and dependent children under R.C. 2151.03(A)(2) and 2151.04(C).

These four children were immediately placed in the emergency custody of FCCS.  In July 2012, the trial court ordered temporary custody of all four children to FCCS.  In March 2016, K.R. was placed in the legal custody of her maternal grandmother.  The three other children were placed in the permanent custody of FCCS, and those placements were affirmed in *In re Jd.R.*, 10th Dist. No. 16AP-364, 2017-Ohio-2940.

{¶ 3}   On June 1, 2018, the trial court placed K.R. in the temporary custody of FCCS. In April 2019, FCCS filed a motion for permanent custody of K.R., and the matter was set for trial on May 31, 2019.  For the next two years, the trial on FCCS's permanent custody motion was repeatedly continued.  On the originally scheduled trial date, the matter was continued until July 17, 2019 to perfect service.  At maternal grandmother's request, the matter was again continued and set for trial on October 22, 2019.  On that date, mother, father, and maternal grandmother, requested another continuance, which was granted, with January 21, 2020 set as the new trial date.  In January 2020, the trial was continued again until June 10 and 11, 2020.  In June 2020, at father's request, the trial was continued and rescheduled for December 14 and 15, 2020.  In December 2020, at maternal grandmother's request, the trial was continued and rescheduled for February 2 and 3, 2021. Finally, based on mother's continuance request, the trial court rescheduled the matter for October 18 and 19, 2021.  Approximately two weeks before the start of trial, mother's counsel notified the court that mother had died in August 2021.

{¶ 4}   On October 18, 2021, the trial began as scheduled.  Prior to the presentation of evidence, counsel for father requested a "very brief continuance, even just until tomorrow."  (Oct. 18, 2021 Tr. at 8.)  FCCS opposed the continuance request.  Father's counsel indicated that, upon learning the week prior to trial that father was incarcerated at the Chillicothe Correctional Institution, he requested a warrant to convey.  On October 15, 2021, the trial court ordered the clerk to issue a warrant to convey to the Franklin County Sheriff, directing the transfer of father to the Franklin County Correction Center from the Chillicothe Correctional Institution, for the purpose of attending the permanent custody trial on October 18 and 19, 2021.  Father's counsel indicated that, due to an administrative mistake after he submitted the request, father was not conveyed as instructed in the warrant to convey order.  Consequently, father was not present at trial.  In considering father's continuance request, the trial court noted father's incarceration was a result of his

own actions, there had been significant delay in the case going to trial, and father's counsel was present at trial. The trial court also found a continuance was not in K.R.'s best interest. Based on these circumstances, the trial court denied the continuance request.

{¶ 5}  Two individuals testified at trial, the FCCS caseworker assigned to the case, Charmayne Patterson, and K.R.'s guardian ad litem ("GAL"), Roger Warner. During trial, the parties agreed that K.R. was in FCCS's temporary custody from April 26, 2012 until March 26, 2016, and then from June 1, 2018 until trial. Patterson, who was assigned as K.R.'s caseworker in January 2021, testified that K.R. had experienced considerable emotional trauma, which required mental health treatment. The case plan objectives included father taking parenting classes and receiving alcohol and drug treatment. Father did not, however, make any effort toward completing any case plan objectives. Additionally, during Patterson's assignment to the case, father was released from prison and then placed back in prison, where he resided since July 2021. Patterson did not know when father had his last interaction with K.R., but she believed it was not during her assignment to the case. To the best of Patterson's knowledge, father had no adequate housing when he was not incarcerated. Based on the circumstances of this case, Patterson recommended the granting of FCCS's request for permanent custody of K.R.

{¶ 6}  GAL, Warner testified K.R.'s mental health issues required placement stability and caregivers trained in dealing with her special needs, and he opined that the only means to achieve a legally secure permanent placement would be granting FCCS's request for permanent custody. Thus, Warner recommended the trial court grant FCCS's request.

{¶ 7}  Following the trial on FCCS's motion for permanent custody, the trial court issued a written decision granting the motion and committing K.R. to the permanent custody of FCCS for the purpose of adoption.

{¶ 8}  Father timely appeals.

## II. Assignment of Error

{¶ 9}  Father assigns the following sole assignment of error for our review:

> The trial court abused its discretion by denying [Father's] motion for a continuance, in violation of his due process rights pursuant to the Fourteenth Amendment to the United States Constitution.

## III.  Discussion

{¶ 10}  Father's sole assignment of error alleges the trial court erred in denying his request to continue the permanent custody trial.  This assignment of error lacks merit.

{¶ 11}  "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children."  *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child.  *In re Murray*, 52 Ohio St.3d 155, 157 (1990).  However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child.  *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).  In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child.  *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 12}  A trial court may grant permanent custody if it determines by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), " 'such relief is in the best interest of the child.' "  *In re G.E.H.*, 10th Dist. No. 15AP-966, 2016-Ohio-3535, ¶ 52, quoting *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 9.  On appeal, we will not reverse a trial court's decision in a permanent custody case unless it is against the manifest weight of the evidence.  *In re I.R.*, 10th Dist. No. 04AP-1296, 2005-Ohio-6622, ¶ 4, citing *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28.  Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence."  *J.T.* at ¶ 8.

{¶ 13}  Father does not argue the trial court's decision to award permanent custody of K.R. to FCCS was against the manifest weight of the evidence.  Instead, he argues the trial court violated his due process rights in not granting his requested continuance and proceeding with the permanent custody trial despite his absence.

{¶ 14}  An appellate court will not reverse a denial of a continuance in a permanent court commitment case, or a decision to proceed at trial in the absence of an incarcerated parent, absent an abuse of discretion.  *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 26, citing *In re B.G.W.*, 10th Dist. No. 08AP-181, 2008-Ohio-3693, ¶ 23; *In re*

*Ang.O.*, 6th Dist. No. L-18-1161, 2018-Ohio-5195, ¶ 17. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ **15**} In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 14. A court should consider: (1) the length of the requested delay, (2) whether the parties have requested and received other continuances, (3) the inconvenience to the parties, witnesses, opposing counsel, and the court, (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived, (5) whether the movant contributed to the circumstances giving rise to the request for a continuance, and (6) any other relevant factors, depending on the unique circumstances of each case. *Woods* at ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *J.B.* at ¶ 26. Additionally, as to an incarcerated parent not transferred to a permanent custody hearing, it is well-settled that the parent's due process rights are not violated when the parent is represented at the hearing by counsel, a full record of the hearing is made, and any testimony that the parent wishes to present could be presented by deposition. *Ang.O.* at ¶ 17.

{¶ **16**} Here, the trial court signed a warrant to convey order, but father was not transferred to court for trial as ordered. In requesting a one-day continuance based on father's absence, his counsel explained to the trial court there had been an administrative mistake resulting in the conveyance failure. Even though that failure was not father's fault, he was incarcerated based on his own misconduct. There was no assurance that the administrative issue could be resolved, and father could be conveyed, by the next day, which was the scheduled second day of trial. And considering most of the prior continuances were at least a few months in duration, granting father's continuance request likely would have resulted in another significant scheduling delay.

{¶ **17**} Father suggests the trial court's discretion was limited because it previously approved the request for a warrant to convey, and but for the administrative error, father would have been present at trial. We are unpersuaded. On the day of trial, the trial court

properly evaluated the circumstances then before it. In denying the continuance request, the trial court correctly noted father's incarceration was a result of his own actions and father's counsel was present at trial. The trial court also found that a continuance was not in K.R.'s best interest as there had been significant delay in the case going to trial. The matter had been delayed numerous times, pushing it well-beyond the time frame set forth in R.C. 2151.414(A)(2), which requires, in the absence of "good cause shown," that a hearing on a permanent custody motion occur no later than 120 days after the filing of the motion. Father's continuance request on the day of trial, October 18, 2021, occurred approximately two and one-half years after FCCS filed its motion for permanent custody of K.R. in April 2019. Moreover, we note a full record of the hearing was made, and father has not shown that he could not have presented any relevant testimony by deposition. These circumstances further undermine father's contention that the trial court violated his due process rights by denying his continuance request and proceeding with the trial in his absence.

{¶ 18} Additionally, father does not argue that, if he had been conveyed from prison to trial, he would have provided testimony that would have impacted the trial court's ultimate decision regarding K.R.'s permanent custody. This court has repeatedly affirmed continuance denials in permanent court commitment cases where there is no showing that a granting of the continuance request likely would have changed the outcome of the case. *See In re J.J.*, 10th Dist. No. 21AP-166, 2022-Ohio-907, ¶ 24 ("putative father makes no argument that a delay in proceedings" would have enabled him to offer "any additional testimony or evidence that would have had an impact on the trial court's ultimate decision regarding permanent custody"); *In re K.J.*, 10th Dist. No. 17AP-457, 2018-Ohio-471, ¶ 22-23 ("mother still does not explain her failure to make any substantial progress toward reunification with her children during the more than two years that the case had been open with FCCS," and "even if mother had been able to testify to newly revealed progress on her case plan, it is unlikely that such information would have changed the outcome of the case"), citing *B.G.W.* at ¶ 27 (no abuse of discretion in denying continuance request where the continuance likely would not have changed the outcome of the case); *In re A.P.*, 10th Dist. No. 08AP-186, 2009-Ohio-438, ¶ 5-6 (no abuse of discretion in denying continuance request where mother made no attempts to contact the court or her counsel to explain her

whereabouts and did not show that a continuance would have "remedied the many ways appellant failed to comply with even the basics of the case plan filed by FCCS").

{¶ 19} At trial, both the caseworker, Patterson, and K.R.'s GAL, Warner, recommended the court grant FCCS's permanent custody motion. Patterson testified that K.R. had experienced considerable emotional trauma in her life requiring mental health treatment. K.R.'s mother died in August 2021, and Patterson indicated father took no steps toward completing any case plan objective, such as by attending parenting classes and receiving alcohol and drug treatment. During Patterson's assignment to the case, which began in January 2021, Patterson had no contact with father despite trying to reach out to him, father had been in and out of prison, and he did not have adequate housing when he was not incarcerated. Patterson understood that, prior to her assignment to the case, father had visited K.R. while she was in FCCS's temporary custody. And Patterson acknowledged the existence of a bond between K.R. and father, which Patterson attributed to K.R.'s "family-oriented nature." (Oct. 18, 2021 Tr. at 47.) During her time assigned to the case, however, Patterson observed no contact between father and K.R. Patterson further testified she could not recommend K.R.'s placement with father because he could not meet her basic or special needs, even when he is not incarcerated. Thus, Patterson opined that granting permanent custody to FCCS was needed to meet K.R.'s need for a legally secure permanent placement. Similarly, Warner, who also had no opportunity to interact with father, testified that K.R.'s mental health challenges created a special need for placement stability and caregivers trained in dealing with her issues. Like Patterson, Warner opined that awarding FCCS permanent custody of K.R. was the only means to obtain a legally secure permanent placement for this child. Thus, the testimony of both the GAL and caseworker supported the trial court's finding that granting FCCS's permanent custody request was in K.R.'s best interest.

{¶ 20} On appeal, father does not challenge either the opinions of the caseworker or GAL given at trial, or the facts they testified to in support of those opinions. Nor does father assert any testimony of his would have refuted evidence presented at the trial demonstrating the award of permanent court commitment to FCCS was in K.R.'s best interest. Thus, father fails to show a continuance likely would have changed the case's disposition.

{¶ 21} For these reasons, we find the trial court's decision to deny the continuance request was reasonable and supported by the record. Because the trial court did not abuse its discretion in denying father's continuance request, we overrule his sole assignment of error.

**IV. Disposition**

{¶ 22} Having overruled father's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

EDELSTEIN, J., concurring.

{¶ 23} To reverse the trial court's denial of a continuance, this court would have to find that the trial court abused its discretion. I agree with the majority that there is no basis to reverse under that deferential standard, especially where the child's father, appellant, has failed to allege in this appeal that the outcome would have been different had he been granted the requested continuance. However, I write separately to express my concern with how the trial court made this discretionary determination below.

{¶ 24} This case deals with one of the most sacred and historically rooted constitutional rights parents possess. *See In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("[T]he right to raise one's children is an 'essential' and 'basic civil right.' "). For good reason, the termination of that fundamental liberty interest has been deemed " 'the family law equivalent of the death penalty in a criminal case.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 19, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). A parent permanently losing this right is entitled to " 'every procedural and substantive protection the law allows.' " *Id.*, quoting *Smith* at 16. *See also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) ("When the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."). That makes sense. That is how we should all hope our justice system would function under such grave circumstances—every party is granted access to the proceedings, every party's voice is heard, and every party is treated fairly.

{¶ 25} Unfortunately, this case is far from that model of justice. Father was incarcerated when the permanent custody hearing was scheduled to commence. Several days before it began, the trial court ordered law enforcement to convey father from prison to the courtroom for the permanent custody hearing. Due to a clerical filing error, however, that did not happen. The permanent custody hearing proceeded—notwithstanding father's absence. As a result, father was not present when he permanently lost his parental rights.

{¶ 26} Of course, this court has recognized that an incarcerated parent does not have an absolute due process right to be present at a permanent custody hearing. *See*, *e.g.*, *In re K.J.*, 10th Dist. No. 17AP-457, 2018-Ohio-471, ¶ 28. And, a trial court has discretion to determine whether to bring an incarcerated parent to a permanent custody hearing. *See*, *e.g.*, *In re A.W.*, 3d Dist. No. 4-16-23, 2017-Ohio-1486, ¶ 16; *In re J.J.*, 10th Dist. No. 21AP-166, 2022-Ohio-907, ¶ 24. But, in this case, the trial court granted father's request for transfer from the institution so he could be present for these most important proceedings. Father remained in prison while his parental rights were permanently terminated—not because the court balanced the interests and determined he should not be permitted to attend but, instead, due to an administrative mistake.

{¶ 27} The trial court could easily have avoided this injustice by granting a continuance of the proceedings. Yes, a continuance would have extended the proceedings that were already far past the statutory limits. *See* R.C. 2151.414(A)(2). And it is true that a continuance would have delayed the introduction of stability and permanence into the child's life. But the requested continuance was not intended to delay, and it was not intended to rectify any wrongdoing on father's part. Instead, a continuance would have given father the opportunity to be present and be heard. And it would have given him certainty that his rights were adequately represented and the outcome in this case was just.

{¶ 28} Father expressed a desire to be present during these proceedings, he followed the rules of court to request transfer, and the court initially concluded that he should be permitted to attend. Through no fault of his own, a clerical error occurred. To me, the delay and inconvenience to the parties and relevant stakeholders would have been outweighed by the certainty and confidence we could all have in the result of proceedings stripping a fundamental right away from a parent.

{¶ 29} Because my view of this issue does not amount to an abuse of discretion under that lax standard and, therefore, cannot serve as a basis on which to reverse and remand, I respectfully concur in the court's decision.

_____