[Cite as *In re B.M.B.*, 2024-Ohio-1214.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

IN THE MATTER OF:

B.M.B., DEPENDENT CHILD

**CASE NO. 2023-P-0099**

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2021 JCC 00513

**O P I N I O N**

Decided: March 26, 2024
Judgment: Affirmed

*Alisa Boles*, 35 East 202nd Street, Euclid, OH 44123 (For Appellant, Michael Blakeman).

*Victor V. Vigluicci*, Portage County Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Benjamin J. Plough*, 221 South Freedom Street, Ravenna, OH 44266 (Guardian Ad Litem).

MATT LYNCH, J.

{¶1} Appellant, Michael Blakeman, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of his daughter, B.M.B., to appellee, the Portage County Department of Job and Family Services (PCDJFS). For the following reasons, we affirm the decision of the lower court.

{¶2} Blakeman is the biological father of B.M.B., born October 28, 2011. The child's biological mother is Nickole Ormiston.

{¶3} On September 1, 2021, a complaint was filed alleging that B.M.B. was

abused and dependent. It alleged that B.M.B. had been running away from her home and going to strangers' houses in her neighborhood, has behavioral issues, and her legal custodian, Rebecca Blake, was unable to continue providing care for her. B.M.B. was placed in the interim predispositional temporary custody of PCDJFS. Following a hearing, B.M.B. was adjudicated dependent. A dispositional hearing was held on November 16, 2021, at which the parents were not present, and temporary custody was granted to PCDJFS. Subsequently, two motions to extend temporary custody were granted. The parents were not present at these hearings.

{¶4} PCDJFS filed a Motion for Permanent Custody on August 1, 2023. It requested termination of parental rights and argued that B.M.B. could not be placed with either parent in a reasonable time.

{¶5} A hearing on the motion for permanent custody was held on November 15, 2023. B.M.B.'s legal custodian, Blake, and her mother, Ormiston, stipulated that permanent custody be granted to PCDJFS. Blakeman's counsel indicated that he had sent correspondence to Blakeman in September and October 2021, and April, July, and September 2022, regarding dates of hearings and decisions issued in this matter. The last letter he sent in December 2022, which included a magistrate's decision, came back as undeliverable. Counsel indicated that he had not received responses or otherwise engaged in communication with his client since he was assigned to the case in September 2021, he was certain that a number of his letters were delivered to Blakeman, and his letterhead contained his contact information. Counsel indicated that Blakeman had recently sent a letter to the Portage County prosecutor's office asking for custody and moved for a continuance of the hearing based on this letter. PCDJFS indicated that the

2

letter had been received the previous day, it was the first communication they had received from Blakeman, and he had properly been served notice of the hearing while incarcerated. The court denied the request for a continuance, finding that Blakeman was properly served in August, "has not ever attended a hearing since 2021, and it's my understanding * * * that he will not be released until sometime in 2024." Blakeman's counsel moved to have the letter admitted into the record, which the court granted.

{¶6} Ormiston testified that she had last seen B.M.B. in 2018, at which time Blake received custody because Ormiston was using drugs. She testified that Blakeman had been abusive to her, which led to his incarceration. She testified that Blakeman had a relationship with B.M.B. "for the couple months here and there that he was out of jail * * * but he was in jail often for domestic violence." She indicated B.M.B. had last seen Blakeman around 2016 or 2017.

{¶7} Rachel Magrell, a PCDJFS caseworker, testified that PCDJFS became involved with B.M.B. in 2021 when her legal custodians, the Blakes, had difficulty caring for her due to dangerous behaviors that put B.M.B.'s sister at risk. Prior to that time, beginning in 2018, Blake had legal custody through a Cuyahoga County case. Magrell indicated that attempts to locate B.M.B.'s biological parents at that time had been unsuccessful. Letters were sent to various family members to find a placement for B.M.B. but were also unsuccessful. Magrell indicated that, while in the temporary custody of PCDJFS, B.M.B. has been in several foster placements as well as residential facilities due to behavioral concerns. She testified that Blakeman had not had contact with B.M.B. since the case was opened in 2021 and B.M.B. did not have a bond with her parents.

{¶8} The guardian ad litem, Benjamin Plough, recommended that permanent

3

custody be granted to PCDJFS.

{¶9}  On November 17, 2023, the trial court issued a Journal Entry granting permanent custody of B.M.B. to PCDJFS.  The court found that B.M.B had been in the custody of children's services for 21 consecutive months of the prior 22 months and had been abandoned by both of her parents.  It found that reunification was unlikely since they had failed to engage in contact with the child and Blakeman was incarcerated.  It granted permanent custody of B.M.B. to PCDJFS.

{¶10}  Blakeman timely appeals and raises the following assignments of error:

{¶11}  "[1.] The trial court erred when it denied incarcerated Father's request for a continuance where Father was not present, had not been provided call-in information, had not had contact with his attorney, had not been deposed, had not attested his position via affidavit, nor otherwise been provided a meaningful opportunity to participate in the hearing, and a letter from Father received by Father's attorney on the day of trial was entered into evidence without addressing the explicit and tacit requests by Father therein such as requests to be contacted, to have contact with his daughter, to attend court via video and for legal advice.

{¶12}  "[2.]  Father's Trial Attorney erred by neglecting to orally convey the contents of Father's letter, or otherwise secure for Father more meaningful participation in the proceedings."

{¶13}  In his first assignment of error, Blakeman argues that a continuance of the trial should have been granted given that, despite the caseworker not making contact with him, he was still able to communicate his desire for a continuance to the court and he was entitled to be present during the permanent custody hearing.

4

{¶14} "It is well established that a parent's right to raise a child is an essential and basic civil right." (Citation omitted.) *In re T.B.,* 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 29. However, "[t]he rights of a parent to his or her child, while fundamental, 'are always subject to the ultimate welfare of the child.'" (Citation omitted.) *In re L.M.R.*, 11th Dist. Lake No. 2016-L-096, 2017-Ohio-158, ¶ 33, citing *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979) ("the termination of the rights of a natural parent should be an alternative of 'last resort'" but is authorized "when it is necessary for the 'welfare' of the child").

{¶15} Given the foregoing, the Ohio Supreme Court has held that parents "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "[G]reat care must be taken to ensure that due process is used in parental-termination proceedings." *In re K.S.W.*, 11th Dist. Portage Nos. 2023-P-0046 and 2023-P-0047, 2023-Ohio-3763, ¶ 32, citing *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.).

{¶16} Juvenile Rule 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties." "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. "[A]n appellate court will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." *In re M.A.S.*, 11th Dist. Portage No. 2019-P-0093, 2019-Ohio-5190, ¶ 15, citing *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 45 N.E.2d 763 (1942), paragraph one of the syllabus.

{¶17} "In evaluating a motion for a continuance, a court should note, *inter alia*: the

5

length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger* at 67-68. "Weighed against any potential prejudice to a [party] are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* at 67. In permanent custody hearings, a court weighs the delay of proceedings to accommodate the parent's participating in the hearing with the needs of the child "to find resolution and permanency." *In re J.C.*, 2023-Ohio-778, 210 N.E.3d 972, ¶ 27 (10th Dist.).

{¶18} In the present matter, Blakeman's request for a continuance was not received until the day prior to the trial on November 15, although the lower court found, and the record demonstrates, that he was served with notice of the permanent custody hearing on August 10. A grant of the continuance would cause an inconvenience to the various parties involved. Further, this court has found that a delay of two weeks in seeking counsel in permanent custody proceedings leading to a request for a continuance could be "considered dilatory" and justified denial of a continuance. *M.A.S.* at ¶ 18. *See also In re B.G.W.*, 10th Dist. Franklin No. 08AP-181, 2008-Ohio-3693, ¶ 26 (court may construe a parent's last-minute attempt at case plan compliance as dilatory). Although Blakeman had been sent various notices of proceedings during the pendency of this matter, he did not make contact with any relevant party regarding the custody of B.M.B. until the day prior to the permanent custody hearing.

6

**{¶19}** Courts have further emphasized in permanent custody proceedings the impact of continuances on delaying the goal of achieving permanency for the child. *See In re K.J.*, 2018-Ohio-471, 107 N.E.3d 50, ¶ 21 (10th Dist.) ("by the time of the PCC hearing, the children had been in FCCS's custody for more than two years, and granting a continuance on the day of the hearing would have presented an inconvenience to opposing counsel * * * as well as prolonging the accomplishment of the ultimate goal of establishing permanency for the children"); *In re E.C.*, 12th Dist. Butler No. CA2016-01-014, 2016-Ohio-2774, ¶ 14 ("[i]n light of the duration of the case, E.C.'s need for permanency, Father's failure to complete any of the services recommended by the agency, and Father's lack of involvement with E.C., we find the juvenile court did not abuse its discretion in denying Father's motion for a continuance"). Here, the record indicates B.M.B. was in Blake's legal custody from 2018 to 2021, and then in PCDJFS' temporary custody since September 2021, where she has been in multiple placements due to her behavioral concerns. During both periods of time, she had no contact with Blakeman. The need for permanency in these circumstances was a factor of particular significance for the trial court's consideration in denying the continuance given B.M.B.'s biological parents' lack of a relationship with her for a period of several years.

**{¶20}** Significantly, Blakeman is also unable to demonstrate prejudice resulting from the failure to grant his request for a continuance. "Denials of continuances have been repeatedly affirmed in permanent custody hearings where there is no showing that a grant of the continuance likely would have changed the outcome of the case." *K.S.W.*, 2023-Ohio-3763, at ¶ 41 (upholding denial of a continuance where the appellant "failed to put forth any offer of proof of the evidence and/or testimony she would have presented

7

had she been at the hearing or how the outcome of the proceeding would have been different had she attended").

{¶21} In *In re S.I.M.*, 11th Dist. Portage No. 2019-P-0100, 2020-Ohio-162, this court considered whether the trial court erred by denying an incarcerated parent's motion to continue proceedings so he could be transported to the permanent custody hearing. It found no abuse of discretion in the denial of the motion where the evidence supported the findings that the child had been abandoned by him and could not be placed with him in a reasonable time due to his incarceration since his appearance at the hearing would not have changed the outcome of the proceedings. *Id.* at ¶ 30. Similarly, there is no evidence of how Blakeman's participation at the hearing would have changed the outcome in any manner. The testimony indicated that Blakeman had not seen his daughter for a number of years, with Magrell indicating he had not seen her during PCDJFS's custody and Ormiston testifying he had not seen her since 2016 or 2017. It is difficult to determine what insight Blakeman could have provided in the proceedings given his lack of a relationship with B.M.B. Further, Blakeman was incarcerated at the time of trial and was not in position to have B.M.B. placed in his custody in the foreseeable future, particularly given his lack of a relationship and a bond with her and her significant behavioral problems that had resulted in the inability of several foster care givers and other facilities to care for her. Under these circumstances, we do not find an abuse of discretion in the denial of Blakeman's motion for a continuance.

{¶22} To the extent that Blakeman argues that it was error for the court not to review the entirety of his letter to the prosecutor, the letter was not filed by Blakeman with the court as a motion seeking relief. His attorney moved on his behalf for a continuance

8

based on the letter but no other motion was pending before the court. Insofar as this issue relates to whether counsel should have moved for further relief on behalf of his client based upon this letter, it will be addressed in the second assignment of error.

{¶23} The first assignment of error is without merit.

{¶24} In his second assignment of error, Blakeman argues that trial counsel was deficient for the failure to "orally convey the contents of Father's letter, especially his desire to be present at the hearing" and should have elaborated on its contents. He further argues that counsel should have ensured Blakeman was given a meaningful opportunity to participate in the proceedings since he could have served to "clarify the extent of his relationship with his daughter and provide further insight as to her needs."

{¶25} "[W]hen the state initiates a permanent custody proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution" which "includes effective assistance of counsel." *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶ 7. "When presented with ineffective assistance of counsel claims in proceedings to terminate parental rights, Ohio courts apply the two-prong *Strickland* test." *Id.* at ¶ 11. To demonstrate ineffective assistance, a party must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶26} Counsel did not discuss the entirety of the contents of the letter when

9

arguing that a continuance should be granted. Instead, the court stated, "I'm assuming based on the letter that he sent to the prosecutor asking for custody, I guess the Court could construe that as a Motion to Continue." Counsel responded that he would "move * * * for a continuance of this hearing because of this letter." The letter expressed that Blakeman would like to gain custody of his daughter and have contact with her, had been battling addiction but was committed to being sober, would be released from jail in a few months, and "might have to schedule a video court on this matter" due to his current incarceration. Even presuming that counsel should have raised and discussed the additional arguments set forth in the letter, such as a request to have custody of B.M.B., we do not find that it would have impacted the outcome of the proceedings. For the reasons discussed in our analysis on the preceding assignment of error, granting additional relief requested by Blakeman would not have changed the outcome of this matter given the delay in the proceedings, how long B.M.B. had been in the custody of PCDJFS and her need for permanency, Blakeman's failure to see B.M.B. for several years, and his inability to provide her a home within a reasonable time frame.

{¶27} In support of the argument that counsel was ineffective by not ensuring Blakeman's participation in the proceedings, he cites *Roque*, 2006-Ohio-7007. In *Roque*, this court reversed an award of permanent custody and held that the mother was denied effective assistance of counsel and the integrity of the proceedings was impacted where she was not present at the hearing and her interests were not adequately represented. We find that this is distinguishable from the present matter. In *Roque*, counsel had a lack of communication with his client but counsel also failed to attend review hearings, participate in discovery, challenge hearsay, and effectively conduct cross-examination.

10

Here, Blakeman does not argue that counsel failed to attend necessary hearings or participate in the proceedings and he did conduct cross-examination of the witnesses, although it was not extensive. To the extent that Blakeman argues counsel failed to ensure his participation by seeking alternate means such as submitting an affidavit or requesting his remote appearance, Blakeman's failure to communicate with counsel made it difficult for counsel to request such relief and his delayed letter received the day before the permanent custody hearing impacted the court's decision on whether any accommodations would be made. Further, as noted above, given the circumstances of this case, we do not find Blakeman's participation in the proceedings would have changed the outcome.

{¶28} Blakeman also argues that failure to ensure his participation constituted a violation of his due process rights. While parents are entitled to due process in proceedings involving termination of parental rights, these "rights may not be absolute" as they apply to incarcerated individuals. *S.I.M.*, 2020-Ohio-162, at ¶ 16; *K.J.*, 2018-Ohio-471, at ¶ 28 ("[a]n incarcerated parent does not have 'an absolute due process right to attend the trial of a civil action to which he is a party'") (citation omitted).

{¶29} To determine whether due process was denied in not allowing an incarcerated defendant to appear at the permanent custody hearing, this court has applied the test in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *S.I.M.* at ¶ 19. Under *Mathews*, the reviewing court considers "[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the

11

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* at 335.

**{¶30}** There is no question, under the first factor, that a parent has the fundamental right to raise his child and has an interest affected by permanent custody proceedings. *S.I.M.* at ¶ 20.

**{¶31}** As to the second factor, the deprivation of the individual's interest, this court has considered, as weighing against the parent, the fact that he will continue to be incarcerated following the permanent custody hearing, that there was not a reasonable possibility of placing the child with him in a reasonable time frame, and the fact that the parent was represented by counsel at the hearing. *Id.* at ¶ 21. Similarly, in the present matter, as addressed above, Blakeman was not going to be released from incarceration until the following year and it is not reasonable to conclude that B.M.B., particularly with her behavioral concerns and her lack of a relationship with Blakeman over the previous several years, could be placed with him in the near future. Further, Blakeman was represented by counsel who argued in favor of a continuance and cross-examined the witnesses at the hearing.

**{¶32}** Finally, as to the third factor, this court has considered the significant interest in ensuring that the child receives a permanent home without further delay. *Id.* at ¶ 22 and 23. The same concerns are applicable here, as addressed above.

**{¶33}** A lack of a due process violation has also been found by other districts in similar situations. In *K.J.*, 2018-Ohio-471, the Tenth District found no due process violation occurred when the father did not attend the hearing due to his incarceration, was represented by counsel, the father had not seen the child or attempted to comply with the

12

case plan for more than one year and demonstrated an inability to be physically present in his children's lives, and the record did not show that his presence would have changed the outcome of the trial. *Id.* at ¶ 29-30. The court held that "father's potential loss of rights 'pale when measured against the best interests of' the children." (Citation omitted.) *Id.* at ¶ 29. *See also In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 51 (the trial court did not deprive the parent of her due process right to a fair permanent custody hearing when it proceeded with the hearing while she was incarcerated because "[c]ounsel meaningfully represented appellant at the hearing, a complete record was made, and appellant has failed to show what additional testimony or evidence she would have offered that would have changed the outcome of the case"); *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 55.

{¶34} The second assignment of error is without merit.

{¶35} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of B.M.B. to PCDJFS, is affirmed. Costs to be taxed against appellant.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2023-P-0099